**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____

|  |  |  |
|---|---|---|
| **SALAH WILLIAMS,** | : | |
| Plaintiff | : | Civ. No. 10-3478 (DRD) |
|  | : | |
|  | : | |
| v. | : | |
|  | : | |
| **STATE OF NEW JERSEY DIVISION OF** | : | |
| **STATE POLICE, GERALD DELLAGICOMA,** | : | |
| **individually and in his official capacity,** | : | |
| **DAVID VALENTE, individually and in his** | : | |
| **official capacity, DENNIS WHITE,** | : | |
| **individually and his officially capacity,** | : | |
| **JOHN DOES 1 through 10, individually and in** | : | |
| **their officially capacity ROBERT DOES 1** | : | |
| **through 10, individually and in their official** | : | |
| **capacity, Jane Does 1through 10, individually** | : | |
| **and in their official capacity and ABC** | : | |
| **ENTITIES 1 through 10, individually and in** | : | |
| **their on capacity.** | : | |
|  | : | |
| Defendants. | : | |
| _____ | : | |

RANDY P. DAVENPORT, ESQ.
50 Park Place, Suite 825
Newark, NJ 07102

_Attorney for Plaintiff,_

PAULA T. DOW
Attorney General of New Jersey
VINCENT J. RIZZO, JR.
Deputy Attorney General
R.J. Hughes Justice Complex
PO Box 112
Trenton, NJ 08625

_Attorney for Defendants._

**DEBEVOISE, Senior District Judge**

This case arises out of the alleged racial profiling, excessive use of force, and wrongful imprisonment of Plaintiff Salah Williams, an African American man, in Newark, New Jersey. Mr. Williams alleges that on January 29, 2008, for no reason other than race, he was stopped by two state troopers, detained, assaulted with a baton, maced, and falsely charged and arrested, resulting in required medical attention and a four-day incarceration for nine motor vehicle and criminal charges which were later dismissed when the filing officer failed to appear twice in municipal court.

Mr. Williams subsequently filed the within Complaint for violation of his rights guaranteed by the Fourth, Fifth, and Fourteenth Amendment of the U.S. Constitution, the New Jersey Constitution, 42 U.S.C. §§ 1983, 1985(3), and 1986, and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2(c).  The claims allege wrongful stop and seizure; excessive use of force; false arrest and imprisonment; malicious prosecution; racial discrimination; failure to train and supervise; and pattern or practice of violating rights of New Jersey residents, encouraged, condoned, and/or ignored by the State of New Jersey and its Division of State Police. Defendants include Troopers Gerald Dellagicoma and David Valente in their official and individual capacity; their alleged supervisor; the State of New Jersey; the State Police; and several unnamed governmental employees and entities (collectively, "Defendants"). The suit is for damages, costs of suit, attorney fees, and any other relief as the Court deems proper and just.

The incident in question arose immediately after one African-American male was stopped and frisked immediately prior across the street from Mr. Williams, and a second African American male was stopped but not frisked when he identified himself as a correctional officer. Mr. Williams alleges that he was a victim of racial-profiling, that but for his race, the troopers

2

would not have acted as they did.  This, he claims, is evidenced by the troopers' similar consecutive conduct on the same section of Chancellor Avenue immediately prior to the assault on him.

Defendants now move for summary judgment pursuant to Federal Rule 56(a) and Local Civil Rule 56.1.  For the reasons set forth below, the motion is granted in part and denied in part. The motion is granted to the extent that Mr. Williams does not oppose the dismissal of:  1) claims arising from Section 1983 and NJCRA which are barred by the doctrine of sovereign immunity applicable to the State, State Police, and troopers in their official capacity; 2) the malicious prosecution claim with respect to Defendant Valente; and 3) the claims alleging unconstitutional policies and practices employed by the State and State Police.  The unopposed motion to dismiss Sergeant Smith from the case is moot because Sergeant Smith was never included as a defendant in the action.

Next, the motion is granted with respect to dismissal of the civil rights conspiracy and racial discrimination claims because Mr. Williams does not allege facts sufficient to establish racial animus.  Accordingly, the 42 U.S.C. § 1986 claim is dismissed by the Court on its own motion.  However, the malicious prosecution claim against Trooper Dellagicoma, the filing officer, may proceed because the prior criminal proceedings ended in Mr. Williams's favor. Finally, the claims arising from the New Jersey Civil Rights Act, may proceed against Troopers Dellagicoma and Valente in their individual capacity, because the affirmative defense of qualified immunity is unavailable in the present state of the evidence.

There being no remaining claims against the State, the State Police, and Trooper White, these parties are hereby dismissed from the action.  Similarly, there being no evidence

implicating the unnamed individuals and entities, and discovery being closed, they are dismissed

from the action.

# I.  BACKGROUND

Mr. Williams is an African-American businessman who owns a local carpet store on

Chancellor Street in Newark, NJ.  Mr. Williams sues Troopers Dellagicoma and Valente in their

official and individual capacity; their alleged supervisor and fellow police officer Dennis White,[1]

in his official and individual capacity; the State of New Jersey; the State of New Jersey Division

of State Police; and several unnamed governmental employees and entities (collectively,

"Defendants").[2]  There is considerable factual dispute as to what transpired between Mr.

Williams and Troopers Dellagicoma and Valente during the incident in question.   Unfortunately,

although the troopers' patrol unit was equipped with a mobile vehicle recorder, it was not

activated as required for motor vehicle stops, accidents, pedestrian contacts and motorist aid.

(Dellagicoma Dep. 36:19-24; 28:5-12; Valente Dep. 23:5-12.)  Mr. Williams alleges the

following relevant facts, all of which are accepted as true for the purposes of the instant motion.

Mr. Williams avers that on January 29, 2008, he was walking near his carpet store located

on 421 Chancellor Avenue, Newark, New Jersey, having just come from purchasing his lunch.

(Williams Dep. 67:14-25.)  Immediately prior to, and across the street from the incident in

---

[1]     It appears from the record that one Sergeant Brooklyn Smith, rather than Dennis White, was the troopers' supervisor at the time of the incident.  (Valente Dep. 62: 3-6, 11-20.)  Dennis White was never the troopers' supervisor, nor was he on patrol.  Rather, Dennis White was involved in programming for community police relations.  (Id. at 62:12-20.)

[2]     The unnamed individuals and entities implicated are:  John Does 1-10, employees of the Division of State Police, in their official and individual capacity; Robert Does 1-10, supervising officers of the Division of State Police, in their official and individual capacity; ABC Entities 1-10, governmental entities, in their official and individual capacity; and Jane Does 1-10, government employees, in their official and individual capacity.

question, Troopers Dellagicoma and Valente stopped and frisked an African-American male in a Laundromat, and stopped there a second African American male, but ceased contact after the individual identified himself as a Department of Corrections employee.  (Walker Dep. 46:1 – 47:2; 14:4 – 15:12, 17-24; 9:21-25; Williams Dep. 114:25 – 115:10.)  Troopers Dellagicoma and Valente then made a U-turn in their vehicle and stopped Mr. Williams, who was walking down the sidewalk across the street from the Laundromat, and questioned him about the contents of his brown bag in-hand.  (Williams Dep. 72:10-22.)  Mr. Williams insists that he did not drive his car just prior to the police stopping him. (Id. at 68:14 – 70:14.)[3]

Mr. Williams told the troopers that his lunch was in the bag, but the troopers nevertheless demanded that Mr. Williams hand them the bag.  (Id. at 73:8-15.)  Mr. Williams reiterated that he was in front of his place of business, had a sandwich in the bag, and that he was going to eat his lunch.  (Id. at 75:22-25.)  The troopers then exited their police vehicle, grabbed Plaintiff by the wrist and tried to take the sandwich out of his hands.  (Id. at 76:7-9.)  The troopers then purportedly beat, kicked, kneed, punched, maced him in the face with pepper-spray, and hit him in the back of his head and across his right hand with a black metal stick.  (Williams Dep. 76:17 – 77:25, 82:3 – 93:1; Walker Dep. 17:7-8, 47:18 – 48:4.) The troopers purportedly never advised Mr. Williams that he was under arrest prior to beating him.  (Williams Dep. 83:25 – 84:7.)  Mr. Williams never attempted to strike any of the officers, push their hands off of him, push them away from him, and did not resist arrest.  (Id. at 85:4-14; 89:3-10; Walker Dep. 48:25 – 49:7.)

---

[3]      In contrast, the troopers maintain that they observed Plaintiff driving over the double yellow street line in his vehicle in the opposite lane of traffic.  The troopers aver that they then made a U-turn to execute a motor vehicle stop, leading to the sidewalk-incident. (Dellagicoma Dep. 8:17 – 24.)

Mr. Williams was arrested and charged with five motor vehicle and four criminal offenses:  Driving While Intoxicated, in violation of <u>N.J.S.A.</u> 39:4-50; Possession of CDS in a vehicle in violation of <u>N.J.S.A.</u> 39:4-49.1;  Careless Driving in violation of <u>N.J.S.A.</u> 39:4-97; Refusing to submit to a breathalyzer in violation of <u>N.J.S.A.</u> 39:4-50.2; Possession of an Alcoholic beverage in a motor vehicle in violation of <u>N.J.S.A.</u> 39:4-51a; Resisting Arrest in violation of <u>N.J.S.A.</u> 2C:29-2A(3)(A); Obstruction of the administration of law in violation of <u>N.J.S.A.</u> 2C:29-1A; Possession of Marijuana in violation of <u>N.J.S.A.</u> 2C:35:10A(4); and Disorderly Conduct in violation of <u>N.J.S.A.</u> 2C:33-2A(1).  (Pl.'s Opp. Br., Exs. E, F).  All of the charges filed against Plaintiff were filed by Dellagicoma.  (Dellagicoma Dep. 19:3-23:24; 27: 3 – 7.)  No charges were filed by Valente.  (Valente Dep. 23:21 – 24:17.)

As a result of the arrest, Mr. Williams received medical treatment and spent four days in detention awaiting arraignment, and was subsequently released on January 31, 2008.  (Pl.'s Reply Br., Ex. F.)  Mr. Williams alleges that he sustained injuries to his hand, leg, and head as a result of the episode.  (Williams Dep. 86:24 – 87:24, 77:11, 91:23.)

Trooper Dellagicoma received two subpoenas to appear in Newark Municipal Court in this matter on June 25 and July 15, 2008, but failed to appear both times.  (Dellagicoma Dep. 27:15 – 29:13.)  Based on the record, no reason is provided for his first failure to appear in this matter.  His second failure to appear was due to a family vacation at the shore.  (<u>Id.</u>)  On July 15, 2008, in the second proceeding on the matter before the Newark Municipal Court, the four criminal charges against Plaintiff were dismissed by the Honorable D. Montes for lack of prosecution.  There was no discovery, and no police officer was present.  (Defs.' MSJ Br., Ex. E., NJ Automated Complaint System, Charge Disposition Inquiry, Complaint Number W 2008 005276, July 15, 2008.)  All charges pending against Mr. Williams were dismissed for lack of

prosecution, no discovery, and/or no police officer present.  (Id.)  It is undisputed by the parties

that the basis for the dismissal of the municipal charges was the complainant's, Trooper

Dellagicoma, failure to appear for the trial proceedings.  (Defs.' MSJ Br. at 26; Pl.'s Opp. Br. at

12.)  It is unclear from the record what became of the five corresponding motor vehicle offenses

since no disposition is submitted.  However the Court presumes they were similarly abandoned

or dismissed for failure to prosecute.

Mr. Williams filed the within Complaint with a jury demand in the Superior Court of

New Jersey on January 29, 2010.  (Defs.' MSJ Br., Ex. A., Complaint.)  The Complaint is

confusing and disorganized, and lists multiple causes of actions and various Defendants within

each Count.[4]  The Complaint alleges violations of Mr. Williams's rights guaranteed by the

---

[4]     Count One:  Violation of Civil Rights guaranteed by the Fourth, Fifth and Fourteenth
Amendments of the United States Constitution, the New Jersey Constitution and 42 U.S.C.
Section 1983, 1985, and 1986, against all herein Defendants, including personal liability by
Troopers Dellagicoma and Valente, for wrongful stop and seizure, physical assault resulting in
hospitalization, and wrongful incarceration.  The count further alleges a pattern or practice of
violating the civil rights of New Jersey residents by the named troopers, encouraged, condoned,
and/or ignored by the State and the State Police.
        Count Two:  Violation of Civil Rights by the troopers with actual malice, willful and
wanton indifference to and deliberate disregard to Mr. Williams's constitutional rights.
        Count Three:  Violation of Constitutional Rights, for the policy and practice of the State
of New Jersey and Division of State Police to authorize certain officers, including Defendant
Trooper(s) to use excessive force in the arrests of minority males who fit a certain profile. The
Count also charges supervisors Robert Does 1 - 10 and others for failure to adequately train,
supervise, and/or control the said troopers, and John Does 1-10 for acting within the scope of
their employment pursuant to such policies and practices.
        Count Four:  Conspiracy to Violate Civil Rights, by all unnamed Defendants.
        Count Five:  Conspiracy to Violate Civil Rights, by State of New Jersey, State Police,
and all unnamed Defendants.
        Count Six:  Respondeat Superior Liability of John, Robert, and Jane Does 1-10, the State
Police, and ABC Entities 1 – 10 while acting within the scope of employment.
        Count Seven:  Respondeat Liability of the State of New Jersey and the State Police for
expressly authorizing Troopers Dellagicoma and Valente, and John and Robert Does 1 through
10, to use excessive force in the line of duty.

Fourth, Fifth, and Fourteenth Amendment of the U.S. Constitution, the New Jersey Constitution, 42 U.S.C. §§ 1983, 1985(3), and 1986, and the New Jersey Civil Rights Act (NJCRA).  The claims allege wrongful stop and seizure; excessive use of force; false arrest and imprisonment; malicious prosecution; racial discrimination; failure to train and supervise; and pattern or practice of violating rights of New Jersey residents, which was encouraged, condoned, and/or ignored by the State of New Jersey and its Division of State Police.  The suit is for damages, costs of suit, attorney fees, and any other relief as the Court deems proper and just.

On July 8, 2010, the case was removed to federal court.  (Defs.' Notice of Removal, Doc. No. 1.)  An Answer to the Complaint was filed on August 26, 2010.  (Doc. No. 6.)  A Discovery Confidential Order was signed by United States Magistrate Shwartz on December 16, 2010.  (Doc. No. 14.)  Discovery closed on this matter on May 11, 2011.  (Joint Status Report, Doc. No. 20.)

Defendants now move for summary judgment against some of Mr. Williams's claims pursuant to Federal Rule 56(a) and Local Civil Rule 56.1, namely:  (1) dismissal of federal claims against the State of New Jersey, the State Police, and the troopers in their official capacity because they are barred by the Eleventh Amendment and not subject to liability under 42 U.S.C. 1983; (2) dismissal of the civil rights conspiracy claim pursuant to 42 U.S.C. 1985(3) for failure to establish racial animus; (3) dismissal of the malicious prosecution claim in its entirety, and specifically with regard to non-filing officers Troopers Valente and Smith, for failure to establish that the underlying criminal proceeding ended favorably; (4) dismissal of claims that the State of New Jersey and the State Police engaged in or maintained unconstitutional policies and practices

---

Count Eight:  Violation of the New Jersey Civil Rights Act of 2004 (NJCRA), against all Defendants for failure to adequately perform or negligently perform an official duty and/or conspire to violate Mr. Williams's civil rights as protected by NJCRA.

that violated Mr. Williams's rights, for failure to factually support the claims; (5) dismissal of the racial discrimination claim, again for failure to establish racial animus; (6) and dismissal of claims arising from the NJCRA based on the principle of sovereign immunity as to the State and its officers in their official capacity, and based on the affirmative defense of qualified immunity.

Mr. Williams only opposes the motion as to the 1985(3) conspiracy claim; the malicious prosecution claim in part, with respect to the filing officer Trooper Dellagicoma's role; the racial discrimination claim; and finally the availability of qualified immunity as a defense for the claims arising from the NJCRA. These opposed items will be discussed in turn below.

Mr. Williams does not oppose the motion to dismiss 1) the federal and state claims arising from Section 1983 and NJCRA against the State of New Jersey, the State Police, and the troopers in their official capacity based on Eleventh Amendment immunity; 2) the malicious prosecution claim, in part, with respect to non-filing Troopers Valente and White; and 3) the claims against the State of New Jersey and the State Police for engaging and maintaining unconstitutional policies and practices.

For the reasons set forth below, Defendants' motion for summary judgment is granted with respect to the unopposed items. The malicious prosecution claim against Trooper Smith is moot because he is not included as a defendant in the action. Further, the motion is granted with respect to the generalized allegations of civil rights conspiracy and racial discrimination claims, because a reasonable fact-finder could not find racial animus on the evidence that has been produced; denied as to Trooper Dellagicoma for malicious prosecution, because the underlying proceeding ended in Mr. Williams' favor as a matter of law; and denied as to the availability of qualified immunity for claims arising under NJCRA against Troopers Dellagicoma and Valente in their personal capacity. Thus, the remaining outstanding claims are against: 1) Trooper

Dellagicoma in his personal capacity for malicious prosecution; and 2) both Troopers

Dellagicoma and Valente, in their personal capacities, for federal and state constitutional

violations arising from Section 1983 and NJCRA of wrongful stop and seizure, excessive use of

force, and false arrest and imprisonment.

## II.  DISCUSSION

### A.  Standard of Review

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing

the facts in the light most favorable to the non-moving party, the moving party is entitled to

judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d

Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  Thus, the Court will enter

summary judgment only when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).

For an issue to be genuine, there must be "a sufficient evidentiary basis on which a

reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d

418, 423 (3d Cir. 2006); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For

a fact to be material, it must have the ability to "affect the outcome of the suit under governing

law."  Kaucher v. County of Bucks, 455 F.3d at 423.  The Court's function, however, is not to

weigh the evidence and determine the truth of the matter, but, rather, to determine whether there

is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Disputes over

irrelevant or unnecessary facts will not preclude a grant of summary judgment.  In determining

whether a genuine issue of material fact exists, the Court must view the facts and all reasonable

inferences drawn from those facts in the light most favorable to the nonmoving party.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of showing that no genuine issue of material

fact exists.  Celotex Corp. v. Catrett, 477 U.S. at 323.  When the moving party does not bear the

burden of proof at trial, the moving party may discharge its burden by showing that there is an

absence of evidence to support the non-moving party's case.  Id. at 325.  If the moving party can

make such a showing, then the burden shifts to the non-moving party to present evidence that a

genuine issue of fact exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-

moving party must offer specific facts that establish a genuine issue of material fact, not just

create "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. at 586.

## B.  Analysis

As previously noted, the submitted complaint is confusing and disorganized.  For the

sake of clarity and judicial efficiency, the analysis herein is organized by party.

### 1.  The State of New Jersey and the State Police

Submitted to the Court are a number of unopposed motions to dismiss claims against the

State and State Police premised on Eleventh Amendment sovereign immunity, because:  a) such

claims are not subject to liability under Section 1983; b) recovery is precluded on the theory of

respondeat superior and/or supervisory liability; and c) state claims are likewise barred pursuant

to the NJCRA.  Also unopposed is the motion to dismiss the claims against the State and State

Police for alleged engagement or maintenance of policies and practices that violated Mr.

Williams's constitutional rights, for failure to factually support the claims.

"On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."  Federal Rule of Civil Procedure 21.

There being no remaining claims against the State and State Police, the Court exercises its discretion to dismiss these parties from the action.

### 2.   Unnamed individuals and entities

Although Mr. Williams initiated this suit over two years ago, and discovery has been closed for approximately one year, he has failed to establish the identities of his John, Robert, and Jane Does 1-10, and "ABC" entities 1-10, and has not set forth any evidence of wrongdoing by them.  Federal Rule of Civil Procedure 21 has been invoked to drop John Doe defendants from a case when plaintiffs failed to include specific allegations of wrongdoing committed by such defendants.  Hightower v. Roman, Inc., 190 F. Supp. 2d 740, 754 (D.N.J. 2002).  See also Brian Adams v. City of Camden, et. al., 461 F. Supp. 2d 263 (D.N.J. 2006).  Furthermore, "[f]ictitious party names may be used at least until reasonable discovery permits the actual defendants to assume their places.  However, fictitious names must eventually be dismissed, if discovery yields no identities." Atlantic Used Auto Parts v. City of Philadelphia, 957 F. Supp. 622, 625 (E.D. Pa. 1997).  The Court exercises its discretion under Rule 21 to dismiss the unnamed individuals and entities from this action.

### 3.   Sergeant Dennis White

Sergeant Dennis White is listed as a defendant for his supposed role as the troopers' supervising officer.  However, Sergeant White was never the troopers' supervisor, nor was he on patrol.  Instead, he was involved in programming for community police relations.  (Valente Dep. 62:12-20.)  The complaint fails to implicate him beyond conclusory allegations for his personal involvement, and/or failure to properly train and/or supervise his officers.  Discovery is now

12

closed and the complaint has not been amended in accordance therewith.  Furthermore, Mr.

Williams does not oppose the motion to dismiss Sergeant White in his official capacity because

such a suit is barred by the Eleventh Amendment and not subject to liability under Section 1983.

Nor does Mr. Williams oppose the related motion to dismiss Sergeant White based on the theory

of respondeat superior and/or supervisor liability under Section 1983, recovery being precluded

under such theory.  The motion for summary judgment is further unopposed as to Sergeant White

for the malicious prosecution claim, because he initiated no legal proceeding against Mr.

Williams.  Based on the unopposed motions and the failure to establish any degree of Sergeant

White's involvement in the matter, the Court exercises discretion pursuant to Fed. Civ. P. R. 21

to dismiss Sergeant White from the action.

### 4. Sergeant Brooklyn Smith

Last, Defendants submit an unopposed motion to dismiss Sergeant Smith, the troopers'

supervisor at the time of the incident, from the malicious prosecution claim because he did not

file any charges against Mr. Williams.  However Sergeant Smith is not a named defendant to the

action.  Despite discovery being closed for approximately one year, Mr. Williams has failed to

amend his complaint to add Sergeant Smith to the action.  The motion to dismiss Sergeant Smith

from the malicious prosecution claim is therefore moot because he is a non-party to the action.

### 5. Troopers Dellagicoma and Valente

#### a. Section 1985(3) conspiracy

"Section 1985(3) permits an action to be brought by one injured by a conspiracy formed

for the purpose of depriving, either directly or indirectly, any person or class of persons of the

equal protection of the laws, or of equal privileges and immunities under the laws." Estate of

Oliva v. N.J. Dep't of Law & Pub. Safety, Div. of State Police, 604 F.3d 788, 802 (3d Cir. 2010)

(internal citation and quotation marks omitted).  To state a claim under 42 U.S.C. 1985(3),[5] a

plaintiff must allege:  (1) a conspiracy; (2) motivated by racial or class based discriminatory

animus designed to deprive, directly or indirectly, any person or class of persons to the equal

protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or

property or the deprivation of any right or privilege of a citizen of the United States.  Lake v.

Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102

(1971)).

"The elements of a conspiracy may be proven entirely by circumstantial evidence."

United States v. Wexler, 838 F.2d 88, 90 (3d Cir. 1988).  See also United States v. McGlory, 968

F.2d 309, 321 (3d Cir. 1992); United States v. Gonzalez, 918 F.2d 1129, 1134 (3d Cir. 1990).

The existence of a conspiracy can be inferred "from evidence of related facts and circumstances

from which it appears as a reasonable inference, that the activities of the participants . . . could

not have been carried on except as the result of a preconceived scheme or common

understanding."  United States v. Giampa, 904 F. Supp. 235, 326 (D.N.J. 1995) (citing United

States v. Kapp, 781 F.2d 1008 (3d Cir. 1986), cert. denied, 475 U.S. 1024 (1986)).  The

existence of a formal agreement need not be proven, rather "it is enough that the parties have a

tacit understanding to carry out the prohibited conduct."  See United States v. Giampa, 904 F.

---

[5]      42 U.S.C. § 1985(3) provides in pertinent part:

> [I]f two or more persons conspire for the purpose of impeding,
> hindering obstructing, or defeating in any manner, the due course
> of justice in any State or Territory, with the intent to deny any
> citizen the equal protection of the laws or to injure him or his
> property for lawfully enforcing, or attempting to enforce, the right
> of any person, or class of persons, to the equal protection of the
> laws . . . the party so injured may have an action for the recovery
> of damages occasioned by such injury or deprivation, against one
> or more of the conspirators.

Supp. at 326 (internal citation omitted).  Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829 (1983); accord Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006); Lake v. Arnold, 112 F.3d at 685.

At issue here is whether Mr. Williams has established a genuine issue of material fact as to prong two of Lake v. Arnold:  race or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws.  112 F.3d at 685.  Mr. Williams essentially raises a racial profiling claim – that because he was the third African-American male to be approached for no reason by two Caucasian officers, he has presented "substantial evidence" that the troopers' actions were motivated by racial or otherwise class-based invidiously discriminatory animus.  (Pl.'s Opp. Br. at 9.)  Defendants counter that there is no factual basis to support a claim that the actions taken by the troopers were motivated by racial animus.  (Defs.' MSJ Br. at 20-21.)

Here, Mr. Williams is clearly a member of a protected class as an African American.  To survive a motion for summary judgment on his Section 1985(3) claim, Mr. Williams is required to put forward facts that would allow a reasonable fact-finder, considering all facts and reasonable inferences in the light most favorable to him, to conclude that the troopers selected their course of action because of his race.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.

The only evidentiary support for racial animus submitted on the record is the race of Troopers Dellagicoma and Valente (Caucasian), and Mr. Williams and the two men stopped prior to him (African-American), and the quick succession of the troopers' stops, limited to one street section.  The fact that three African-American men were stopped and harassed by officers,

for no apparent reason, is not alone sufficient to support an inference of racial motivation,

particularly when the event occurred in an exclusively African-American neighborhood.

Defendants' failure to proffer a non-discriminatory reason for their behavior should be

considered.  See e.g., Major Tours, Inc., et al. v. Colorel, et. al., 720 F. Supp. 2d 587 (D.N.J.

2010) (denying motion to dismiss and upholding plaintiffs' discrimination claim, noting that

"[d]efendants in this case have offered no nondiscriminatory reason for any of the racially

discriminatory behavior specifically alleged in the Complaint, nor is there any obvious

nondiscriminatory explanation for the disparate treatment alleged by Plaintiffs."); Aschcroft v.

Iqbal et al., 556 U.S. 662 (2009) (holding that a discrimination complaint must plead factual

allegations that, if true, would tend to show that a discriminatory purpose and not some benign

purpose behind the conduct alleged to have discriminatory effects).

Instead, Defendants urge the Court not to consider the troopers' actions that day on

Chancellor Avenue prior to their exchange with Mr. Williams, and argue that they are "neither

material to the Court's consideration of this motion nor relevant to the issues raised in the

Complaint or their resolution by this Court." (Defs.' Reply Letter Br. at 3.)  The Court finds that

the exchanges with the two individuals prior to Mr. Williams are clearly supported by the record

and both material and relevant to the issues raised in the Complaint, see Anderson v. Liberty

Lobby, Inc., 477 U.S. at 248; Matsushita Elec. Indus. Co. v. Zennith Radio Corp., 475 U.S. at

587; Kaucher v. County of Bucks, 455 F.3d at 423, but alone are insufficient to establish racial

animus.

Racial animus is often difficult to prove because it relies on hidden and unconscious

biases.  This is ever-true in claims of racial profiling and police misconduct, such as in stop and

frisk practices similar to the ones alleged here.  Here, no racial epithet was muttered, nor is there

16

any indication of prior discriminatory history by the troopers in question put forth.  Neither is statistical evidentiary support submitted of discriminatory treatment by the New Jersey State Police.[6]  Indeed, the episode took place in a majority-minority neighborhood, further making a determination of racial animus harder to reach than had it occurred in an all-white or at least more integrated community.  However, based solely on the racial composition of the parties, despite the quick succession of events on one street section, the Court finds that a reasonable fact-finder could not deduct, even considering all facts and reasonable inferences in the light most favorable to Mr. Williams, that the troopers were motivated by racial animus.  Plaintiff's conclusory allegations of conspiracy and racial animus, without any factual support beyond the racial composition of the parties and geographic and temporal locale, are not sufficient to survive summary judgment.  Accordingly, the Court will grant summary judgment in favor of the Defendants as to Mr. Williams's 1985(3) claim for conspiracy to commit a civil rights violation.  Relatedly, the Court on its own motion dismisses Mr. Williams's claim of 42 U.S.C. § 1986 (Action for neglect to prevent conspiracy).[7]

---

[6]     See e.g., <u>State v. Soto</u>, 324 N.J. Super. 66, 84 (Law Div. 1996) (finding that defendants had established a prima facie case of racial discrimination based on evidence that blacks were 4.85 times more likely than whites to be stopped for traffic violations by New Jersey State Police on the New Jersey Turnpike); see also <u>Floyd et al v. City of New York</u>, 813 F. Supp. 2d 417, 453 (S.D.N.Y. 2011) (denying the city's motion for summary judgment on plaintiff's Equal Protection claims based on statistical evidence and the inadequacy of efforts to take remedial steps to reduce the racial disparity of stops).

[7]     42 U.S.C. § 1986 (Action for neglect to prevent conspiracy) provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USCS § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be

### b.  Malicious prosecution[8]

Mr. Williams asserts a malicious prosecution claim against Trooper Dellagicoma for filing charges against him which were later dismissed.  The disposition of the Newark Municipal Court establishes that four criminal charges[9] were dismissed for lack of prosecution, no discovery, and/or no police officer present.  (Defs.' MSJ Br., Ex. E, NJ Automated Complaint System, Change Disposition Inquiry, Complaint No. 2008005276, 7-15-08, Doc. No. 30-4.)  It is undisputed by the parties that the basis for the dismissal of the municipal charges was the complainant's failure to appear for the trial proceedings.  (Defs.' MSJ Br. at 26; Pl.'s Opp. Br. at

---

liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action, and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding five thousand dollars damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

[8]    Defendants submit an unopposed motion for summary judgment to dismiss Trooper Valente from the malicious prosecution claim.  Trooper Valente did not file the charges against Mr. Williams.  Therefore, the second prong to establish a Section 1983 claim for malicious prosecution, that the defendant initiate the criminal proceeding without probable cause, fails as to Trooper Valente.  See Johnson v. Knorr, 477 F.3d 75, 81-82 (3d. Cir. 2007). Trooper Valente is hereby dismissed from the malicious prosecution claim. The motion is granted.

[9]    The four criminal charges at issue are:  Resisting Arrest in violation of N.J.S.A. 2C:29-2A (3) (A); Obstruction of the administration of law in violation of N.J.S.A. 2C:29-1A; Possession of Marijuana in violation of N.J.S.A. 2C:35:10A(4); and Disorderly Conduct in violation of N.J.S.A. 2C:33-2A(1).

12.)  The record shows that Trooper Dellagicoma failed to appear before the Newark Municipal

Court in this matter twice, on June 25, 2008 and on July 14, 2008.  (Dellagicoma Dep. 27:15 –

29:13.)  Based on the record, no reason is provided for Trooper Dellagicoma's first failure to

appear in this matter.  His second failure to appear was due to a family vacation at the shore.  (Id.)

 Defendants argue that because "[n]o findings as to guilt or innocence were made . . .

Plaintiff cannot meet the requirement that the underlying proceeding terminated in his favor and

his claim of malicious prosecution must fail."  (Defs.' MSJ Br. at 26.)  The question presented is

whether a dismissal of criminal charges resulting from a filing officer's failure to appear and

submit discovery based on the underlying circumstances, indicates the innocence of the accused

in order to prevail on a malicious prosecution claim under Section 1983 as a matter of law.

 To establish a Section 1983 claim for malicious prosecution, a plaintiff must show:  (1)

defendant initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's

favor; (3) defendant initiated the criminal proceeding without probable cause; (4) defendant

acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff

suffered deprivation of liberty consistent with a violation of the Fourth Amendment or a

violation of another explicit text of the Constitution.  Johnson v. Knorr, 477 F.3d 75, 81-82 (3d.

Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

 In 2009, the en banc Court of Appeals approved the approach that requires the plaintiff to

establish the common law elements.  See Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009)

(en banc) (applying the Restatement (Second) of Torts §§ 659, 660 to determine whether a

Section 1983 malicious prosecution claim was deemed to have terminated in favor of the

accused).  See also Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) (same); Hilfirty v.

Shipman, 91 F.3d 573 (3d Cir. 1996) (same).

The Second Restatement of Torts, Section 653 (Elements of Cause of Action) provides:

> A private person[10] who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if
>
> (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and
> (b) the proceedings have terminated in favor of the accused.
>
> Restat. 2d of Torts § 653.

The Restatement (Second) of Torts Section 659 (Manner of Termination) provides:

> Criminal proceedings are terminated in favor of the accused by
>
> (a) a discharge by a magistrate at a preliminary hearing, or
> (b) the refusal of a grand jury to indict, or
> (c) the formal abandonment of the proceedings by the public prosecutor, or
> (d) the quashing of an indictment or information, or
> (e) an acquittal, or
> (f) a final order in favor of the accused by a trial or appellate court.
>
> Restatement 2d of Torts § 659, and accompanying Comment (a). See also Comment (b) ("In order that there be a sufficient termination in favor of the accused it is not necessary that the proceeding should have gone so far as to preclude further prosecution on the ground of double jeopardy. . .").
>
> Rest. 2d of Torts § 659.

Section 660 (Indecisive Termination of Proceedings) further provides that:

> A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if

---

[10] Although the Restatement (Second) of Torts § 653 *et. seq.* explicitly applies to malicious prosecution by a "private person", the Court of Appeals nevertheless relies on the sequence to inform analysis of malicious prosecution by a public officer.  See <u>Kossler v. Crisanti</u>, 564 F.3d at 186; <u>Donahue v. Gavin</u>, 280 F.3d at 383; <u>Hilfirty v. Shipman</u>, 91 at 573.

> (a) the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused; or
>
> (b) the charge is withdrawn or the prosecution abandoned because of misconduct on the part of the accused or in his behalf for the purpose of preventing proper trial; or
>
> (c) the charge is withdrawn or the proceeding abandoned out of mercy requested or accepted by the accused; or
>
> (d) new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused.

Rest. 2d of Torts § 660.

The corresponding Comment (a) informs that:

> Proceedings are 'terminated in favor of the accused,' as that phrase is used in Section 653 [*et. seq.*] [ ] and throughout this Topic, only when their final disposition is such as to indicate the innocence of the accused.  Consequently a termination that is sufficiently favorable to the accused to prevent any further prosecution of the proceedings will *not* support a cause of action under the rules stated in Section 653 if made under any of the circumstances in this Section [660].

Rest.  2d of Torts § 660, Comment (a) (emphasis added).

"The purpose of the favorable termination requirement is to avoid the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Kossler v. Cristanti, 564 F.3d at 187 (quoting Heck v. Humphrey, 512 U.S. at 484) (internal quotation marks omitted).

 "[W]hile a grant of *nolle prosequi* can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecution abandons criminal charges are considered to have terminated favorably."  Donahue v. Gavin, 280 F.3d at 383.  In Donahue v. Gavin, the Superior Court of Pennsylvania reversed the judgment and remanded a new trial due to the failure of the trial judge to give a "corrupt and polluted source" charge to the

jury.  Id. at 384.  However, the county District Attorney moved to *nolle prosequi* because the accused had already served jail time and if convicted, would most likely not receive any additional jail time.  Id.  The Court of Appeals reasoned that "[f]ar from indicating [ ] innocence, the nol pros merely reflected an informed and reasoned exercise of prosecutorial discretion as to how best to use [ ] limited [judicial] resources. . . . Accordingly, there is no way that [the complainant] can establish the malicious prosecution that is necessary to establishing the constitutional violation he has alleged as a basis of his § 1983 civil rights claim. . . ." Id.  Thus, in Donahue v. Gavin, the Court of Appeals held that entry of a *nolle prosequi* only counts as a favorable termination when the circumstances of the entry indicate the plaintiff's innocence.  Id. at 383.

In an en-banc opinion, the Court of Appeals later reiterated the fact-intensive nature of the inquiry.  See Kossler v. Cristanti, 564 F.3d at 188 ("[T]he result depends on the particular circumstances.") (internal quotation omitted).  Therein, the state court judge acquitted the arrestee on aggravated assault and public intoxication charges, but found him guilty of disorderly conduct and fined him $100.  The arrestee brought a malicious prosecution claim under Section 1983, relying on the two acquittals as the sole basis for arguing that he obtained a favorable termination.  The District Court determined that under this particular factual scenario, the criminal proceedings did not end in his favor, despite the two acquittals, because the charge of aggravated assault was predicated on the same factual basis as the charge of the disorderly conduct – an altercation between the plaintiff and a police officer.  The Court of Appeals was confronted with the question of "[w]hether acquittal on at least one criminal charge constitutes 'favorable termination' for the purpose of a subsequent malicious prosecution claim, when the charge arose out of the same act for which the plaintiff was convicted on a different charge

22

during the same criminal prosecution."  Id.  The Court of Appeals examined "the entire criminal

proceeding" and reasoned that:

> [t]he favorable termination element is not categorically satisfied
> whether the plaintiff is acquitted of just one of several charges in
> the same proceeding.  When the circumstances – both the offenses
> as stated in the statute and the underlying facts of the case –
> indicate that the judgment as a whole does not reflect the plaintiff's
> innocence, then the plaintiff fails to establish the favorable
> termination element.
>
> Id.

Thus, refusing to divorce his simultaneous conviction for disorderly conduct when the acquitted

aggravated assault and public intoxication charges arose from the same course of conduct, the

Court of Appeals "conclude[d] that the state criminal proceeding – the entirety of which resolved

[plaintiff's] guilt and punishment for intentionally making physical contact with a city police

officer after consuming alcohol – did not end in [plaintiff's] favor, even when we view the facts

in the light most favorable to him."  Id.

Defendants attach to their Reply Brief an unpublished decision by the Court of Appeals,

Morris v. Attorney General, et al., No. 08-4145 (3d Cir. Dec. 6, 2011), which upheld the Court's

grant of summary judgment of a malicious prosecution claim because the appellant failed to

establish that the prior criminal proceeding ended in his favor and was indicative of his

innocence.  Therein, the Attorney General moved to dismiss the appellant's case, which was

reviewed in a special proceeding to handle discovery issues in 76 pre-trial cases allegedly

involving racial profiling on the New Jersey Turnpike.  The Attorney General moved to dismiss

the cases because it was too difficult to "discern which cases involve[d] intentional targeting of

minorities when the other drug courier profile-related factors existed to justify the stop."  Id.

(citing Morris v. Verniero, No. 03-1001, 2008 WL 4330179 at *3 (D.N.J. Sept. 17, 2008)).

> The Attorney General clearly stated that he did not dismiss Morris'
> indictment because he thought Morris was innocent.  On the
> contrary, in his public announcement regarding the dismissal, the
> then-Attorney General said, "'let's be clear; the defendants in these
> cases may have prevailed in their motions to suppress, but they are
> criminals nonetheless.  All were carrying some form of contraband
> for distribution in communities in this and other states.'"

> Id.

In addition to the Attorney General's statements, the Court of Appeals noted that the appellant

claimed for the first time – six years after his initial arrest – that he did not possess the cocaine

found on his person, and that the police had planted the evidence on him.  Thus, the Court of

Appeals found that the underlying proceeding did not end in the appellant's favor "because it

was not indicative of his innocence of the crimes charged."  Id.

Here, complainant Trooper Dellagicoma initiated criminal charges against Mr. Williams,

and presumably did not alert the municipal court to delay proceedings based on his purported

scheduling conflicts, or otherwise allow the charges to be pursued by submitting discovery.  As a

result of his failure to appear twice, the criminal charges against Mr. Williams were summarily

dismissed.  The underlying factual context is enveloped in alleged racial profiling, harassment

and excessive use of force, starting at the sidewalk-stop, and resulting in medical treatment and a

four-day imprisonment for criminal charges which were later dismissed for failure to appear

twice in court.  Defendants have not put forth affirmative proof for why the dismissal of charges

was not a determination favorable to Mr. Williams.  The case history presented to us is

distinguishable from Morris v. Attorney General, et al., supra, because the matter therein was

dismissed as a result of a prosecutorial stalemate, rather than a colorable supposition of

innocence.  Indeed, the origin of the dismissals for *nolle prosequi* by the Court of Appeals in

both Morris v. Attorney General, et al. and Donahue v. Gavin is a concern for judicial efficiency.

In contrast, the underlying facts here indicate that the "judgment as a whole" reflects Mr. Williams's innocence to establish the favorable termination element to his malicious prosecution claim. See <u>Kossler v. Cristanti</u>, 564 F.3d at 188. Denying the viability of a malicious prosecution claim under these circumstances would circumvent the thrust and purpose of the cause of action and provide an incentive to file false charges, but to not prosecute *in toto*, discover, or appear in court. Thus, Defendants' motion for summary judgment as to the malicious prosecution claim against Trooper Dellagicoma is denied as a matter of law.

### c.   Racial discrimination

In order to establish a prima facie case of discrimination under the Equal Protection Clause, appellants must prove that they were members of a protected class and that they received different treatment than that received by other similarly-situated individuals. See <u>Keenan v. City of Philadelphia</u>, 983 F.2d 459, 465 (3d Cir. 1992) (quoting <u>Andrews v. Philadelphia</u>, 895 F.2d 1469 (3d. Cir. 1990) (citations omitted)). In other words, they must prove both the existence of purposeful discrimination and differential treatment from those similarly situated. <u>Id.</u> For the reasons articulated above regarding a failure to find racial animus under Section 1985(3), the Court finds that a reasonable fact-finder could not conclude based on the record that Mr. Williams received differential treatment based on his status as a member of a protected class. Therefore, the Court grants Defendants' motion for summary judgment on the racial discrimination claim.

### d.   Availability of defense of qualified immunity for personal capacity claims under the New Jersey Civil Rights Act

The question is whether qualified immunity is an affirmative defense to claims asserted pursuant to the New Jersey Civil Rights ("NJCRA"), and if so whether it is available here to Troopers Dellagicoma and Valente.  NJCRA provides, in pertinent part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

> N.J. Stat. Ann. § 10:6-2(c).

The NJCRA was modeled after 42 U.S.C. § 1983 and creates a private cause of action for violations of civil rights secured under either the United States or New Jersey Constitutions. Slinger v. New Jersey, No. 07-5561, 2008 U.S. Dist. LEXIS 71723 (D.N.J. September 4, 2008), rev'd on other grounds 366 Fed. Appx. 357 (3d Cir. 2010); Armstrong v. Sherman, No. 09-716, 2010 U.S. Dist. LEXIS 55616 (D.N.J. June 4, 2010).  See also Chapman v. New Jersey, No. 08-4130, 2009 U.S. Dist. LEXIS 75720 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart:  Section 1983."); Pettit v. New Jersey, No. 09-3735, 2011 U.S. Dist. LEXIS 35452  (D.N.J. Mar. 30, 2011) ("This district has repeatedly interpreted NJCRA analogously to § 1983.")

Qualified immunity by definition relies on the notion of good faith, and is an affirmative defense in actions pleaded under the Constitution and laws of the United States, including Section 1983.  See Harlow v. Fitzgerald, 457 U.S. 800, 815, n. 24 (1982). "Decisions by [the Supreme Court] have established that the 'good faith' defense has both an 'objective' and a 'subjective' aspect. . . . [W]e have held that qualified immunity would be defeated if an official

*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury . . . ." Id. at 814 (internal citation omitted) (emphasis in original). Thus, as outlined by the Supreme Court, the doctrine of qualified immunity is designed to shield government officials from actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Montanez v. Thompson, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223 (2009)).

Moreover, in the context of a claim of false arrest and imprisonment by a police officer, the officer is entitled to qualified immunity when "a reasonable officer could have believed that probable cause existed to arrest" the plaintiff. Hunter v. Bryant, 502 U.S. 224, 228 (1991). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).[11]

Little case law directly addresses the question of whether persons subject to liability under the New Jersey Civil Rights Act have a qualified immunity defense. See Love v. N.J. Div.

---

[11]    Notably, the New Jersey Torts Claims Act explicitly bars immunity for false arrest or false imprisonment. See N.J.S.A. § 59:3-3 ("A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."). But see Major Tours, Inc., et al. v. Colorel, et. al, 720 F. Supp. 2d 587, 610 (D.N.J. 2010) ("The [NJTCA] does not grant public employees immunity from suits under rights of action provided by the New Jersey Constitution, nor from suits under the NJCRA.") (citing Owens v. Feigin, 194 N.J. 607 (2008) (holding that the NJTCA does not apply to the NJCRA); Garlanger v. Verbeke, 223 F. Supp. 2d 596 (D.N.J. 2002)).

of Youth & Family Servs., 2010 U.S. Dist. LEXIS 73977, 7-8 (D.N.J. July 22, 2010).   The

District Court of New Jersey has "assume[d], without deciding that, as a legal matter, state

officials sued in their individual capacity under the New Jersey Civil Rights Act do have a

qualified immunity defense available to them."   Id.   See also Peteete v. Asbury Park Police

Dep't, 2011 U.S. Dist. LEXIS 9188 (D.N.J. Jan. 31, 2011) (applying Section 1983 qualified

immunity analysis to NJCRA claim), affirmed on other grounds, 2012 U.S. App. LEXIS 8822

(3d Cir. March 1, 2012); Al-Ayoubi v. City of Hackensack, 2011 U.S. Dist. LEXIS 148626

(D.N.J. Dec. 28, 2011) ("This [Section 1983] qualified immunity analysis applies similarly for

the NJCRA claim.")   The Court in Pettit v. New Jersey, supra, relied on the assumption in Love

v. DYFS, supra, and proceeded to undertake the two-step inquiry applied in a Section 1983

analysis to determine the applicability of qualified immunity under NJCRA, as proscribed by the

Supreme Court:

> First, a court must decide whether the facts that a plaintiff has
> alleged or shown make out a violation of a constitutional right.
> Second, if the plaintiff has satisfied this first step, the court must
> decide whether the right at issue was clearly established at the time
> of a defendant's alleged misconduct. Qualified immunity is
> applicable unless the official's conduct violated a clearly
> established constitutional right.

Montanez v. Thompson, 603 F.3d 243, 250 (3d Cir. 2010) (citing Pearson v. Callahan, 555 U.S.

at 232; Saucier v. Katz, 533 U.S. 194 (2001)). "Where a defendant asserts a qualified immunity

defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that

the defendant's conduct violated some clearly established statutory or constitutional right." Pettit

v. New Jersey, supra (quoting Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997)). "Only

if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine

issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." Id.  In determining whether a defendant is entitled to qualified immunity, the court may address either of the two prongs first.  Id.

Here, Defendants argue that the defense of qualified immunity should be extended to claims arising from the NJCRA because the defense has been applied to the source act, Section 1983, and codified by the NJTCA.  Defendants thus move to dismiss all claims related to the NJCRA pursuant to the affirmative defense of qualified immunity.

The Court finds that the defense of qualified immunity is appropriate to claims arising under the NJCRA, based on the history of NJCRA and the Court's prior decisions applying the defense as an extension of a Section 1983 analysis.  Giving Mr. Williams the benefit of every favorable inference, neither the federal nor state claims are defeated by the defense of qualified immunity.  Applying the two-step inquiry mandated by the Court of Appeals in Montanez v. Thompson, supra, evidence permits a finding that the defense of qualified immunity is inapplicable here.  Taking the evidence in the light most favorable to Mr. Williams, a reasonable fact-finder could conclude that the conduct of Troopers Dellagicoma and Valente was in violation of clearly established constitutional rights of which they must have had knowledge.  Similarly, for the purposes of the claim of false arrest and imprisonment, the question of whether or not the troopers had probable cause to arrest is a fact-specific inquiry which a reasonable fact-finder could conclude in the negative at this stage of review.  Due to outstanding unresolved disputes of fact relevant to the immunity analysis, a decision on the availability of the defense of qualified immunity is premature.

### e.  Federal and state official capacity claims

Last, Defendants submit an unopposed motion for summary judgment to dismiss Troopers Dellagicoma and Valente in their official capacity because they are not "persons" subject to liability under Section 1983 and the NJCRA.  Eleventh Amendment immunity applies to state entities and officials if "the state is the real, substantial party in interest."  Regents of the Univ. of Cal. V. Doe, 519 U.S. 425, 429 (1997) (internal citations omitted).  In determining whether the State is a "real" party in interest, we consider:  (1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy."  Haybarger v. Lawrence County Adult Prob. & Parole, 552 F.3d 193, 198 (3d Cir. 2008) (citing Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 665, 659 (3d Cir. 1989)).  The jurisdictional limitation applies to state agency employees sued in their official capacities with respect to claims for damages.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 (1984) ("Pennhurst II") (citing Dugan v. Rank, 372 U.S. 609, 610 (1963)); see also Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) ("official capacity suits 'generally represent only another way of pleading an action against an entity of which the officer is an agent.'") (internal citation omitted).  The suit here is for damages on all counts.  Therefore, Eleventh Amendment immunity applies and the motion to dismiss the federal and state claims against the officers in their official capacity is granted.

### III.  CONCLUSION

In light of the foregoing an order will be entered as follows:

1.   All claims against the State of New Jersey including its Division of State Police, and against Gerald Dellagicoma, David Valente and Dennis White in their Official capacities, are dismissed.

30

2.  The claim for malicious prosecution against David Valente is dismissed with prejudice.

3.  All claims against Dennis White in his individual capacity are dismissed with prejudice.

4.  The motion to dismiss the malicious prosecution claim against Gerald Dellagicoma is denied.

5.  The motion to dismiss the 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") claims against Gerald Dellagicoma and David Valente for wrongful stop and seizure, excessive use of force, false arrest, and false imprisonment is denied.

6.  The Court on its own motion dismisses all claims against John Does 1 through 10 individually and in their official capacities, Robert Does 1 through 10 individually and in their official capacities, Jane Does 1 through 10 individually and in their official capacities, and ABC Entities 1 through 10.

7.  Except as permitted above, all claims for violation of § 1983 and the NJCRA for failure to adequately perform or negligently perform an official duty and/or to violate Mr. Williams's civil rights, failure to train and supervise, and generally to engage in a civil rights conspiracy and racial discrimination are dismissed.

8.  Mr. Williams's claim pursuant to 42 U.S.C. § 1985(3) is dismissed with prejudice.

9.  The Court on its own motion dismisses Mr. Williams's claim pursuant to 42 U.S.C. § 1986 with prejudice.

10. Defendants' motion to dismiss the surviving claims on the defense of qualified

immunity is denied.[12]

/s/Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  May __24__, 2012

---

[12]     There remain to be tried in this Complaint:  1) Claims against Gerald Dellagicoma and
David Valente in their personal capacities, for the Section 1983 and NJCRA claims of wrongful
stop and seizure, excessive use of force, false arrest, and false imprisonment; 2) The Claim
against Gerald Dellagicoma in his personal capacity for malicious prosecution.